IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ISABEL BALDERAS., §
 §
        Plaintiff, §
 § Civil Action No. 16-CV-2652-D
VS. §
 §
LUPE VALDEZ, et al., §
 §
        Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Isabel Balderas ("Balderas") sues defendants Dallas County and former Dallas County Sheriff Lupe Valdez ("Sheriff Valdez"), alleging that they denied her a religious accommodation and withdrew an offer of employment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*[1] Defendants move for summary judgment on this claim, and Balderas cross-moves for summary judgment. Concluding that Balderas' motion for summary judgment is moot in light of defendants' amended answer and that defendants have failed to meet their heavy burden under the beyond peradventure standard, the court denies both motions.

I

On March 3, 2013 Balderas applied for employment in the position of Data

---

[1] Balderas states in her response brief that "[s]he brought a single cause of action under [Title VII], alleging that Dallas County failed to offer her a religious accommodation and withdraw a job offer as a result." P. 5/1/18 Br. 4.

Manager/Director[2] of the Data Management Unit ("DMU") of the Dallas County Jail ("Jail").[3] The DMU is the department within the Jail that processes all paperwork for inmates being booked into or released from the Jail, and the DMU Director is solely and directly responsible for the intake and release of each inmate. Because inmates are released from the Jail 24 hours a day, and because the Director of the DMU is required to approve any "exceptions" to the DMU process, which frequently occur after normal business hours or on weekends, defendants describe the DMU Director position as a "24-hour-on-call position." Ds. 1/29/18 Br. 2. In her online application, Balderas marked "yes" when asked if she had the "[a]bility to be on-call 24 hours for unit emergencies." Ds. 1/29/18 Mot. 8.

In July 2013, allegedly based on the representations made in her online application, the Dallas County Sheriff's Department extended to Balderas a conditional offer of employment. Balderas then advanced to a final interview with Administrative Chief Deputy Cheryl Wilson ("Wilson") and Executive Chief Deputy Jesse Flores ("Flores"), which took place on July 10, 2013.

During her July 10, 2013 interview, Balderas informed Flores and Wilson that she was

---

[2]Although the position initially posted was for "Data Manager," the position was reclassified on May 28, 2013 from a Manager grade to a Director grade.

[3]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

an Orthodox Jew, that she observed the Jewish Sabbath, and that she would need to leave a few minutes early on Friday afternoons during the winter months so that she could meet her religious obligation of not working or driving after sundown on this day. Balderas also explained that she could not work from Friday sundown until Saturday sundown unless it was "a matter of life or death," *id*. at 10, but that she expected to be able to train her staff to be able to handle emergencies that arise during the Sabbath. To make up for this religious accommodation, Balderas offered several alternatives, including limiting her lunch break and/or making up time on any of the other non-Sabbath days during the week. Balderas contends that Flores and Wilson did not discuss her request for a reasonable accommodation during the meeting or any time thereafter.

The day after she was conditionally offered the Director of the DMU position, Sergeant Shawna Turner left a voice message stating that Balderas' offer for the position was being rescinded. Balderas then filed with the Equal Employment Opportunity Commission ("EEOC") a charge of religious discrimination, alleging that the Sheriff's Department had denied her a religious accommodation and had then withdrawn an offer of employment, in violation of Title VII. The EEOC issued a right to sue letter, and Balderas then sued Dallas County and Sheriff Valdez[4] in state court, alleging a claim for failure to reasonably accommodate her religious practices, in violation of Title VII. Defendants removed the case to this court. Both sides now move for summary judgment on Balderas' Title VII claim.

---

[4]Balderas sues Sheriff Valdez in her official capacity only.

II

Each movant's summary judgment burden depends on whether she or it is moving for relief on a claim or defense for which she or it will have the burden of proof at trial. To be entitled to summary judgment on a claim or defense for which the movant will have the burden of proof, the moving party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When the summary judgment movant will not have the burden of proof at trial on a claim or defense, the moving party need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmovant must go beyond her or its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could

return a verdict for the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Title VII prohibits an employer from discriminating against an employee on the basis of her religion. *See* 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Thus "[a]n employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273 (5th Cir. 2000).

The court analyzes a Title VII claim for a failure to accommodate religious observances under a burden-shifting framework akin to the *McDonnell Douglas*[5] burden-shifting framework. The employee must first establish a prima facie case of religious discrimination. *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

---

[5]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> To establish a prima facie case of religious discrimination under Title VII, the plaintiff must present evidence that (1) she held a bona fide religious belief, (2) her belief conflicted with a requirement of her employment, (3) her employer was informed of her belief, and (4) she suffered an adverse employment action for failing to comply with the conflicting employment requirement.

*Tagore v. United States*, 735 F.3d 324, 329 (5th Cir. 2013) (citing *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 499 n.9 (5th Cir. 2001)). Defendants do not dispute that Balderas has established a prima facie case of religious discrimination.

Once the plaintiff in a religious discrimination case makes out a prima facie case, "the burden shifts to the defendant to demonstrate either that it reasonably accommodated the employee, or that it was unable to reasonably accommodate the employee's needs without undue hardship." *Antoine*, 713 F.3d at 831. Because defendants will have the burden of proving undue hardship at trial, to obtain summary judgment, they "must demonstrate, without genuine and material factual dispute, and as a matter of law, that [they were] unable to reasonably accommodate [Balderas'] religious beliefs without incurring undue hardship." *Ford v. City of Dallas, Tex.*, 2007 WL 2051016, at *1 (N.D. Tex. July 12, 2007) (Fitzwater, J.). "[U]ndue hardship exists, as a matter of law, when an employer incurs anything more than a *de minimis* cost to reasonably accommodate an employee's religious beliefs." *Bruff*, 244 F.3d at 500 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)).

IV

The court begins with Balderas' motion for summary judgment. Balderas moves for summary judgment on the ground that, because she has established a prima facie case of

failure to accommodate religious observances, and because defendants waived, by not pleading, the affirmative defense of undue hardship, she is entitled to summary judgment on her Title VII claim. On January 22, 2018, before Balderas filed her motion for summary judgment, defendants filed a motion for leave to amend their answer to plead undue hardship as an affirmative defense. On February 15, 2018 the court granted defendants' motion for leave to amend their answer, and defendants filed an amended answer in which they plead the affirmative defense of undue hardship. In light of defendants' amended answer, the court denies Balderas' motion for summary judgment—which is premised entirely on defendants' waiver of the affirmative defense of undue hardship—as moot.

V

The court turns next to defendants' motion for summary judgment, which turns on whether they have established beyond peradventure that Dallas County was unable to accommodate Balderas' observance of the Sabbath without incurring undue hardship.

A

In support of their summary judgment motion, defendants contend that, because the DMU Director must be available 24 hours a day, 7 days a week to perform the essential functions of the job, it was not possible for defendants to accommodate Balderas' observance of the Sabbath; that under Sheriff's Department policy, the DMU Director is solely and directly responsible for the intake and release of each inmate and must approve any exception

that arises in the DMU process,[6] exceptions frequently occur after hours and on weekends, and it is outside the scope of authority for an assistant director to make decisions with respect to exceptions to the DMU process; that Dallas County could not accommodate Balderas' observance of the Sabbath by having other DMU staff or Sheriff's Department command staff "cover" her lack of availability from Friday sundown to Saturday sundown each week because the assistant manager and supervising assistant chief deputy lack the experience and institutional knowledge of the DMU Director, they do not have Dallas County-issued telephones and are not on call 24 hours a day (although they can be contacted through email if necessary, and are sometimes required to work evenings and weekends, as needed), and requiring them to take on the DMU Director's duties and responsibilities would be above their experience, skill set, and pay scale; that reorganizing the DMU to accommodate Balderas would undermine the Sheriff's Department goal of having one person be an accountable gatekeeper for the DMU process; and that even if other DMU or Sheriff's

---

[6]Defendants provide the following examples of the types of exceptions that require the DMU Director's 24-hour availability: an inmate is to be released to another law enforcement agency but the agency fails to pick up the inmate, and the DMU Director must decide whether to hold the inmate based on the severity of the charge and the character of the detainer; an inmate's Dallas County criminal charges are resolved, but an ICE detainer is in place, requiring the DMU Director to act as the liaison with ICE, to effectuate the timely transfer, and to be accountable for any decisions made; power outages and computer outages occur that require manual entry throughout the DMU process and require the DMU Director to be physically present to oversee the process; an inmate is improperly released, and the DMU Director must take immediate action, research the issue, and contact courts and law enforcement agencies to process and effectuate a new warrant for the released inmate's arrest; and other instances in which random emergencies arise that only the DMU Director can address.

Department employees *could* take on Balderas' duties during the Sabbath, requiring them to do so, on a permanent, weekly basis, would require them to assume a disproportionate workload and would place an undue burden on those employees, resulting in an undue hardship as a matter of law.[7]

Balderas responds that defendants have failed to adduce any evidence that hiring an additional DMU Director was necessary; that Balderas was available to be on-call 24/7 via telephone; that the "essential" job functions of the DMU Director position would have permitted Balderas to train her Assistant Managers/Directors to address emergencies in the extremely limited circumstances that might arise that required her physical presence at the Jail; that there is no cost associated with the delegation of DMU Director responsibilities to the Assistant Director; that the prior Assistant Manager testified that she was fully capable of handling all of the functions of the DMU Director position, including communication with ICE, intake and release of prisoners, power outages, court communication, and warrants, and that an Assistant DMU Manager/Director could have been trained to deal with emergency-related issues on a short-term basis if the DMU Director was unavailable; that observing the

---

[7]Defendants also argue that hiring a second DMU Director to cover the Sabbath each week would result in more than a *de minimis* cost and burden to Dallas County and Jail operations. Balderas does not suggest, however, nor have defendants established beyond peradventure, that defendants would need to hire a second DMU Director to accommodate Balderas' religious observation of the Sabbath. Accordingly, the court will not address this argument.

Sabbath is not a weekly occurrence but is merely a consideration during the winter months[8]; that the evidence shows that Balderas would have been allowed to answer her Dallas County-issued telephone 24 hours a day, 7 days a week to determine the appropriate actions that needed to be taken, and that this is exactly the process alleged to have been observed by former DMU Manager Marlene James and current DMU Director Jimmy Patterson; and that the only difference between Balderas' availability and the availability of other DMU Managers/Directors is that Balderas could not have physically driven to the Jail during the Sabbath to address an emergency, but the current job description would have allowed her to train her staff accordingly and delegate responsibility.

In reply, defendants posit that, although Balderas asserts that she could answer the telephone during her observance of the Sabbath, she concedes that she could not have physically driven to the Jail during the Sabbath unless it was a matter of life or death; she offers no evidence that she would have been able to answer emails during the Sabbath; and Balderas' admitted unavailability by email or in person is sufficient to prove as a matter of law that her religious observance is simply incompatible with the essential job functions of the DMU Director position requiring 24-hour availability; that it is in the exclusive sphere of authority for the elected sheriff to determine the best practices for running the Jail, and the

---

[8]Defendants argue in reply, and the court agrees, that although Balderas cites her affidavit for the proposition that the Sabbath is not a weekly event, Balderas does not aver in her affidavit that she did not observe the Jewish Sabbath each and every week of the year. Moreover, she previously acknowledged that she observes the Sabbath from a few minutes before sundown on Friday to nightfall on Saturday.

undisputed summary judgment record establishes that Sheriff's Department policy provided that only the DMU Director had final decisionmaking authority in approving exceptions to the DMU process and for "solv[ing] complex problems or issues," Ds. 5/14/18 Reply 4 (alteration in original) (citation omitted); that Balderas confuses delegation of *tasks and duties* with delegation of the DMU Director's *scope of authority and exclusive decisionmaking role*, and there is no evidence that the DMU Director could delegate her scope of authority and exclusive decisionmaking role, per Sheriff's Department policy, as the single gate-keeper and mitigator of risk for the intake and release of 5,000 Jail inmates; and that, even if another Dallas County employee could have assumed the DMU Director's job duties *and* scope of authority, such an accommodation—which would have required a lesser-paid, lesser-qualified employee to shoulder the DMU Director's responsibilities every Friday evening and Saturday, on a permanent basis, resulting in undue hardship for both the other employees and Jail operations—would have resulted in more than a *de minimis* burden as a matter of law.

B

An employer incurs undue hardship as a matter of law when it is "required to bear a greater than de minim[i]s cost or imposition upon co-workers" in order to accommodate an employee's religious observations. *Brenner v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146 (5th Cir. 1982) (citing *Hardison*, 432 U.S. at 84); *see also Antoine*, 713 F.3d at 839 ("[A]n undue hardship is present if the proposed accommodation would force changes in the schedules of other employees and alter the employer's otherwise neutral procedure." (citing *Hardison*,

432 U.S. at 81)). "[T]he 'rationale underlying this determination is that anything more than a de minim[i]s cost would result in discrimination against other employees, a result the Court concluded Congress did not intend." *Brenner*, 671 F.2d at 146 (citation omitted); *see also Hardison*, 432 U.S. at 81 ("It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees . . . in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far."). In the wake of the Supreme Court's decision in *Hardison*, courts have held that where an employer would have to deprive an employee of her shift preference or impose on that employee additional responsibilities in order to accommodate another employee's observation of the Sabbath, an undue hardship exists as a matter of law. *See, e.g., Eversley v. MBank Dall.*, 843 F.2d 172, 176 (5th Cir. 1988) ("[W]e conclude that it is unreasonable and an undue hardship on an employer to require the employer to force employees, over their express refusal, to permanently shift from a daytime to a nighttime shift in order to accommodate another employee's different Sabbath observation."); *Vaughn v. Waffle House, Inc.*, 263 F.Supp.2d 1075, 1085 (N.D. Tex. Mar. 5, 2003) (Sanderson, J.) ("Title VII does not require an employer to impose additional responsibilities on an employee's coworkers in accommodating that employee's religious beliefs. Further, where, as here, an employer's accommodation would force other employees, against their wishes, to modify their work schedules to accommodate the religious beliefs of a particular employee, the same constitutes an undue hardship." (citations omitted)); *EEOC v. Dalfort Aerospace, L.P.*, 2002 WL 255486, at *4 (N.D. Tex.

Feb. 19, 2002) (Solis, J.) ("Title VII does not require that the accommodation process infringe on the rights of the plaintiff's fellow employees[.] An accommodation that would force other employees, against their wishes, to modify their work schedules to accommodate the religious beliefs of the complaining employee would be unreasonable and an undue hardship." (citations omitted)); *see also Leonce v. Callahan*, 2008 WL 58892, at *5 (N.D. Tex. Jan. 3, 2008) (Roach, J.) (granting summary judgment for employer and noting that, while voluntary shift "swapping" can in some cases be a viable alternative, plaintiff's "religious imperative not to work on the Saturday shift (the Sabbath) was ongoing and permanent. In all reasonable likelihood, there would come a time when there was no willing volunteer to take [his] shift.").

C

The court agrees with defendants that, to the extent the accommodation Balderas proposes would require the delegation of all or a substantial amount of the DMU Director's duties and responsibilities to the Assistant DMU Directors from Friday sundown until Saturday sundown on a permanent, weekly basis, this accommodation would impose an undue burden on Dallas County.[9] As the court explained in *Vaughn*:

> Title VII does not require an employer to impose additional responsibilities on an employee's coworkers in accommodating that employee's religious beliefs. Further, where, as here, an employer's accommodation would force other employees, against their wishes, to modify their work schedules to

---

[9]The court assumes *arguendo* that the DMU Director's responsibilities, including the approval of all exceptions to the DMU process, would even be delegable.

accommodate the religious beliefs of a particular employee, the same constitutes an undue hardship.

*Vaughn*, 263 F.Supp.2d at 1085. Requiring the Assistant DMU Directors to "cover" for Balderas during the Sabbath by assuming *all* of her responsibilities and the entire scope of her authority would clearly force these employees to take on additional responsibilities and modify their schedules (i.e., from occasionally working on evenings and weekends as needed to being on call every Friday evening and Saturday to accommodate Balderas' religious beliefs. "Title VII does not contemplate such unequal treatment." *Hardison*, 432 U.S. at 81.

But the court cannot conclude under the heavy beyond peradventure standard, based on the current summary judgment record, that Balderas' proposed accommodation would result in more than a *de minimis* burden.[10] For example, Balderas maintains that Dallas County could have accommodated her by permitting her to leave work 30 minutes early on Fridays during the winter months and by permitting her to be available by telephone on Saturdays. She concedes that she could not have physically driven to the Jail during the Sabbath unless it was a matter of life or death, but she offers evidence that she could "take emergency phone calls to address any emergency situation (which if the matter was not life or death I would still be able to answer the phone and direct my staff as to the proper action to be taken)." P. 5/1/18 App. 1. She also offers proof that, like the former DMU Manager

---

[10]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

and current DMU Director, she could have handled any after-hours emergency "appropriately via telephone," P. 5/1/18 Br. 21, by "determin[ing] the appropriate actions that needed to be taken, if any," *id.* at 20, and by "train[ing] her staff accordingly and delegat[ing] responsibility," *id.* Balderas avers that she could have trained her staff "to address emergencies in the extremely limited circumstances that might arise and require [her] physical presence," and that she "was otherwise available to be on-call 24/7 via telephone." *Id.* at 17-18. Accordingly, although a jury may have little difficulty finding that, considering the duties of the DMU Director, accommodating Balderas' religious beliefs would have resulted in more than a *de minimis* cost to Dallas County, the court holds that this affirmative defense must be resolved by a trial.[11] The court therefore denies defendants' motion for summary judgment.

---

[11]Because a genuine issue of material fact exists on the question whether defendants could have accommodated Balderas' observation of the Sabbath by permitting her to handle after-hours emergencies via telephone, the court also concludes that defendants have failed to establish beyond peradventure that the position of DMU Director is completely incompatible with the religious practice of being unable to work on the Sabbath.

* * *

Accordingly, for the reasons explained, the court denies the parties' motions for summary judgment.

**SO ORDERED**.

July 25, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE